**Anthony Michel CUNNING, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary of Health, Education and Welfare, Defendant.**

**No. CIV–79–1060–D.**

United States District Court, W. D. Oklahoma.

July 21, 1980.

Bryce A. Baggett, Oklahoma City, Okl., for plaintiff.

Larry D. Patton, U. S. Atty., Oklahoma City, Okl., for defendant.

MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final administrative decision of the Defendant Secretary of Health, Education and Welfare awarding Esther Regina Luckett (hereinafter "Esther") mother's insurance benefits under § 202(g) of the Social Security Act (Act), 42 U.S.C. § 402(g), and awarding Esther's four children surviving child's benefits under § 202(d) of the Act, 42 U.S.C. § 402(d), based on the earnings of Ernest Luckett, a/k/a Ernest Luckett Cunning (hereinafter "Ernest"), the deceased wage earner. The Plaintiff herein, Anthony Michel Cunning, is the natural son of Ernest and had himself filed a claim for surviving child's benefits based on the earnings of Ernest. The Defendant's allowance of the claims of Esther and her children resulted in a reduction of Plaintiff's benefits.

In the instant case, it appears from the administrative record before the Court that on July 15, 1976, Plaintiff's mother, Roberta Miller, filed an application for surviving child's insurance benefits on behalf of Plaintiff based on the earnings of Ernest (Tr. 71–74). Thereafter, Esther filed appli-

cations also based on the earnings of Ernest for mother's insurance benefits for herself (Tr. 83–90) and for child's insurance benefits on behalf of her children (Tr. 91–98). On May 23, 1977, the Social Security Administration issued an award certificate stating that Roberta Miller was entitled to monthly benefits of $93.70 commencing in June of 1976 on behalf of Plaintiff (Tr. 112, 126). A letter from a representative of the Defendant to Plaintiff's attorney dated July 6, 1977, indicates that Plaintiff's monthly benefit rate of $93.70 represented the monthly benefits awarded to each Plaintiff, Esther, and Esther's four children based on their respective claims (Tr. 113–115). Subsequently, Plaintiff's attorney instituted correspondence with the Social Security Administration which eventually led to Plaintiff filing a request for reconsideration of the reduction of Plaintiff's monthly benefits due to the allowed entitlement of Esther and her four children (Tr. 120). On February 27, 1978, the Social Security Administration issued its notice of reconsideration determining that the award of monthly benefits to Esther and her four children and the resulting reduction of benefits payable to Plaintiff were correct under the pertinent sections of the Act (Tr. 130–136). Plaintiff then requested a hearing (Tr. 45) and the Administrative Law Judge before whom Plaintiff, his mother and his attorney appeared found that Esther was not entitled to mother's insurance benefits or to child's insurance benefits on behalf of her children (Tr. 30–34). Esther then requested review of the Administrative Law Judge's decision (Tr. 23–29). On July 31, 1979, the Appeals Council reversed the Administrative Law Judge and found that Esther was entitled to the mother's and child's insurance benefits she sought (Tr. 4–9). The Appeals Council's decision became the final decision of the Secretary and Plaintiff then brought this action for judicial review. On June 12, 1980, the Court conducted oral arguments in this case.

The scope of the Court's review authority is narrowly limited by 42 U.S.C. § 405(g). The Secretary's decision must be affirmed if supported by substantial evidence. *Gardner v. Bishop*, 362 F.2d 917 (Tenth Cir. 1966); *Stevens v. Mathews*, 418 F.Supp. 881 (W.D.Okla.1976). Substantial evidence is more than a scintilla. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Stevens v. Mathews, supra*. However, substantial evidence is less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); *Stevens v. Mathews, supra.*

In conducting this judicial review, it is the duty of this Court to examine the facts contained in the record, evaluate the conflicts and make a determination therefrom whether the facts support the several elements which make up the ultimate administrative decision. *Heber Valley Milk Co. v. Butz*, 503 F.2d 96 (Tenth Cir. 1974); *Nickol v. United States*, 501 F.2d 1389 (Tenth Cir. 1974); *Stevens v. Mathews, supra*. In this case, the ultimate administrative decision is evidenced by the findings of the Appeals Council. Those findings were as follows:

"1. Esther acquired the status of 'widow' of the wage earner under section 216(h)(1)(B) of the Social Security Act.

2. Esther's four children each acquired the status of 'child' of the wage earner under section 216(h)(2)(B) of the Social Security Act and each child is deemed dependent on the wage earner under section 202(d)(4) of the Act." (Tr. 9).

§ 202(g)(1) of the Act, 42 U.S.C. § 402(g)(1), provides for the payment of benefits under certain circumstances to a widow of an individual who died fully or currently insured if, among other things, at the time of filing her application for such benefits, she has in her care a child of such individual entitled to a child's insurance

benefit. § 216(c) of the Act, 42 U.S.C. § 416(c), defines the term "widow" to include the surviving wife of an individual if she was married to such individual for a period of not less than nine months immediately prior to the day on which he died.

§ 216(h)(1)(B) of the Act, 42 U.S.C. § 416(h)(1)(B), provides in pertinent part that where it is established to the satisfaction of the Secretary that an applicant in good faith went through a marriage ceremony with a fully or currently insured individual resulting in a purported marriage between them which, but for a legal impediment not known to the applicant at the time of such ceremony, would have been a valid marriage, and such applicant and the insured individual were living in the same household at the time of the death of such insured individual, then such purported marriage shall be deemed to be a valid marriage.

§ 202(d)(1) of the Act, 42 U.S.C. § 402(d)(1), provides for the payment of child's insurance benefits to the child of an individual who dies a fully or currently insured individual if such child, among other things, has filed an application for child's insurance benefits, has not attained the age of 18 or was a full-time student and had not attained the age of 22, and was dependent upon the individual at the time of such individual's death. § 216(e) of the Act, 42 U.S.C. § 416(e), defines the term "child" to include "a stepchild who has been such stepchild for not less than one year immediately preceding the day on which application for child's insurance benefits is filed or (if the insured individual is deceased) not less than nine months immediately preceding the day on which such individual died ...." § 216(e) further provides that a person who is not the stepchild of an individual shall be deemed the stepchild of such individual if such individual and the mother of such person went through a marriage ceremony resulting in a purported marriage between them which, but for a legal impediment, would have been a valid marriage. Under § 202(d)(4) of the Act, 42 U.S.C. § 402(d)(4), a stepchild shall be deemed dependent upon his stepparent at the time of the stepparent's death if, at such time, the child was living with or was receiving at least one-half of his support from such stepparent.

In the instant case, the evidence in the administrative record before the Court establishes that Ernest and Plaintiff's mother, Roberta Miller, were ceremonially married in St. Louis, Missouri, on February 27, 1959 (Tr. 146–147). Plaintiff was born of this marriage on August 31, 1959 (Tr. 148). Roberta was granted a final divorce from Ernest in Missouri in 1964 (Tr. 149).

Sometime thereafter, Ernest married his second wife, Gloria, from whom he was divorced in New York on July 15, 1975 (Tr. 201–206).

In 1972 Ernest met Esther and her four illegitimate minor children, citizens and residents of India, apparently while Ernest was in India in the course of his employment as a seaman on the S. S. American Astronaut of the United States Line. After several return trips, Ernest and Esther were ceremonially married in India on May 15, 1975 (Tr. 153). On May 20, 1975, Ernest filed affidavits with the Court of Metropolitan Magistrate, Calcutta, to have the four children's surnames changed to his name (Tr. 154–161). In July, 1975, Ernest filed a petition with the High Court at Calcutta seeking guardianship of Esther's children in order that he could take Esther and her children to the United States (Tr. 172–180). On August 15, 1975, Ernest executed an "Affidavit of Support" for the United States Immigration and Naturalization Service wherein he indicated that Esther and her four children were dependent upon him for support; that he was willing and able to receive, maintain and support them; and that he executed this affidavit in order "to secure passport for my family for the purpose of immigrating" (Tr. 165–166). From August 19, 1975, through June 24, 1976, Ernest apparently sent Esther five money orders totaling $2,100.00 (Tr. 185–186). Two days after the last money order was sent to Esther, Ernest died at the United States Public Health Service Hospital in Staten Island, New York, on June 26, 1976.

After thoroughly examining the administrative record before it, the Court is of the opinion that substantial evidence is contained therein to support the Secretary's decision that Esther is entitled to mother's insurance benefits and to child's insurance benefits on behalf of her children. The record clearly establishes that Ernest and Esther went through a marriage ceremony on May 15, 1975, and there is no evidence whatsoever to indicate that Esther was aware of Ernest's marriage to Gloria and the divorce proceedings pending at that time or that Esther otherwise acted in bad faith. Furthermore, the record indicates that the additional requirements for mother's and child's insurance benefits as set out above have been satisfied by Esther and her children. Accordingly, the Court finds and concludes that the Secretary's decision should be affirmed and a Judgment of affirmance should be entered this date.