**Samuel A. FERGUSON,
Plaintiff-Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of
Health and Human Services,
Defendant-Appellee.**

No. 79–3135.

United States Court of Appeals,
Fifth Circuit.
Unit A

March 30, 1981.

Laurel G. Weir, Philadelphia, Miss., for plaintiff-appellant.

L. A. Smith, III, Asst. U. S. Atty., Robert E. Haubert, U. S. Atty., Jackson, Miss., Walter E. McCabe, Jr., Atty., Dept. of HEW, Baltimore, Md., for defendant-appellee.

Before GOLDBERG, POLITZ and SAM D. JOHNSON, Circuit Judges.

GOLDBERG, Circuit Judge:

Our nation's courts are required to play a limited role in reviewing the disposition of social security benefits claims. We are not to meddle in the fact-findings of the Secretary of Health, Education and Welfare [1] ("the Secretary") unless the decision is not supported by "substantial evidence." *Western v. Harris*, 633 F.2d 1204 (5th Cir. 1981); *Fruge v. Harris*, 631 F.2d 1244 (5th Cir. 1980). Based upon this laissez faire standard, the district court in the case at bar granted summary judgment in favor of the Secretary. However, because we find this to be one of the rare cases in which substantial evidence does not support the Secretary's decision, we reverse and remand the matter for more administrative moil.

## I. *PROCEDURAL BACKGROUND*

Appellant Samuel Ferguson ("Ferguson" or "Appellant") applied for social security disability benefits in 1977, but his request was denied by the Social Security Administration. Record at 72–94. A hearing was then held before an Administrative Law Judge ("ALJ") on his claim. The ALJ found that while Ferguson could no longer engage in "strenuous physical activity," he retained the "capacity for light to moderate physical activity on a sustained basis," *id.* at 21, and was therefore not disabled within the language of the statute. 42 U.S.C.A. §§ 423(d), 1382c(a) (West 1974); *see infra* pages 246–247. The Appeals Council summarily affirmed the ALJ's decision, Record at 3, and pursuant to Social Security Act § 205(g), 42 U.S.C.A. § 405(g) (West 1974), Ferguson sought judicial review of what was then "a final decision of the Secretary of Health, Education and Welfare." Record at 170. The district court granted summary judgment for the Secretary based on the conclusion "that there was substantial evidence" to support the ALJ's finding of no disability. Ferguson appeals from the judgment of the district court.

1. After the claim in this case was initiated, the tripartite status of the Department of Health, Education and Welfare was bifurcated into the Department of Education and the Department of Health and Human Services.

On appeal, Ferguson argues that the ALJ's decision was not supported by substantial evidence and that his disability was proven as a matter of law. He asks us therefore to reverse the summary judgment granted by the district court and to order the Secretary to award the requested benefits. While we find the ALJ's decision unsupported by substantial evidence, we also find that the record does not support a definitive ruling for appellant, and hence we remand the case for further consideration in light of this opinion.

## II. *PROCEEDINGS BEFORE THE ALJ*

After considering Ferguson's own testimony and various medical reports, the ALJ concluded that Ferguson was impaired by "(1) alcoholism, [and] (2) hypertensive vascular disease, class II." *Id.* at 20. As to the former, the ALJ found that since appellant "has the ability to stop drinking," the impairment was "remediable." *Id.* As to the latter, the ALJ found that the heart defect "results in only slight limitation of physical activity," and could be controlled with medication. *Id.* at 21. The ALJ reasoned that since Ferguson could perform light or moderate physical activity, he could "work as a custodian or janitor," and the ALJ then took administrative notice that such jobs existed "in the national economy" and "in the area in which the claimant resides." *Id.* Taking into account appellant's age, experience and education, the ALJ concluded that Ferguson was not disabled within the meaning of the statute and was therefore not entitled to the requested benefits.

## III. *BURDEN OF PROOF AND FINDINGS BELOW*

█ It is clear that a claimant seeking social security benefits bears the brunt of the burden of proof on the disability question.[2] *Western, supra*, 633 F.2d at 1206; *Fruge, supra*, 631 F.2d at 1246. Under the statutory standard relevant to the case at bar, it must be shown that the claimant is unable to engage in "substantial gainful activity" due to some "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," before a finding of disability can be made. The impairment must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.A. §§ 423(d), 1382c(a)(3) (West 1974); *see Fruge, supra*, 631 F.2d at 1245–46; *Flowers v. Harris*, 616 F.2d 776 (5th Cir. 1980) (per curiam); *Demandre v. Califano*, 591 F.2d 1088 (5th Cir.) (per curiam), *cert. denied*, 444 U.S. 952, 100 S.Ct. 428, 62 L.Ed.2d 323 (1979). The claimant establishes a prima facie case of disability by showing that he can no longer perform his "usual line of work." *Western, supra*, 633 F.2d at 1206. Once this burden is met, the burden shifts to the Secretary to show "that the claimant is able to perform some other kind of substantial work available in the economy."[3] *Id.; see Brenem v.*

---

**2.** It is not precisely correct to say that a claimant has the entire burden of proving his disability, since once the claimant has established the fact that he can no longer do his former work, the burden shifts, in some sense, *see* note 3, *infra*, to the Secretary to show that the claimant can perform other substantial gainful work existing in the national economy. *See Western, supra*, 633 F.2d at 1206. Hence the claimant does not bear the entire burden of proving that he is "not only unable to do his previous work, but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.A. §§ 423(d), 1382c(a)(3) (West 1974). This burden is bifur-

cated between the claimant and the Secretary. *See infra.*

**3.** It is well-settled that once a claimant meets his burden in a disability case, the burden shifts to the Secretary. See, e. g., *Western, supra*, 633 F.2d at 1206; *Fruge, supra*, 631 F.2d at 1246. However, if the Secretary fails to meet this burden—for example, if the court finds that substantial evidence does not support an ALJ's finding that a claimant who has proven that he cannot do his former work is able to perform other substantial gainful activity existing in the national economy—then the Secretary does not necessarily lose the appeal. When substantial evidence does not support

*Harris*, 621 F.2d 688 (5th Cir. 1980) (per curiam); *Johnson v. Harris*, 612 F.2d 993 (5th Cir. 1980) (per curiam).

### A. *Vocational Expert*

In the case at bar, the ALJ found that appellant had met his burden of showing that he was unable to perform his former job, but that other work existed in the national economy which Ferguson could perform. The ALJ relied on medical testimony in finding that Ferguson could do light to moderate work, and took administrative notice of the fact that jobs requiring light to moderate work existed in the national economy. The ALJ cited work "as a custodian or janitor in any public or private building" as an example of this kind of job. Record at 21. No vocational expert testified as to the types of light to moderate physical activities required of janitors or similar workers. Moreover, no evidence was introduced as to whether Ferguson would be able to perform the activities of a janitor given his physical condition. The ALJ's conclusion rested only on evidence that appellant could perform light to moderate activity and on judicial notice that jobs requiring light to moderate activity existed in the national economy.

It is clear that in the case at bar there was ample evidence to support the ALJ's finding that Ferguson could do light work, *see, e. g., id.* at 151, and it is equally clear that the ALJ was entitled to take adminis-trative notice of the fact that light work exists in the national economy, *see Brown v. Finch*, 429 F.2d 80 (5th Cir. 1970); *Breaux v. Finch*, 421 F.2d 687 (5th Cir. 1970) (per curiam); *Floyd v. Finch*, 441 F.2d 73 (6th Cir. 1971). However, the uncontradicted medical evidence indicated that the types of light to moderate work which Ferguson could perform were limited, *see* Record at 151, and it was unclear whether jobs requiring *only the types of light to moderate work which appellant could perform* existed in the national economy. Indeed, the ALJ's finding that Ferguson could be a janitor or custodian seems puzzling in light of the doctor's unrefuted conclusion that Ferguson could not perform "pushing/pulling movements," "climbing (stairs or ladders) and balancing," and "reaching (overhead)."[4] *Id.* at 151. Considering the record as a whole, we therefore find that there was not substantial evidence to support the ALJ's finding that appellant could perform work which exists in the national economy.

The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony. While in exceptional cases testimony by a vocational expert may not be necessary to satisfy the Secretary's burden of proving that a prima facie disabled claimant can do other work available in the national economy,[5]

---

the Secretary's decision but the court cannot make a definitive ruling of disability based upon the record before it, the case is often remanded for further administrative proceedings as provided in 42 U.S.C.A. § 405(g) (West 1974). *See* note 8, *infra.* Hence the term "burden of proof" is technically incorrect when applied to the Secretary's burden of showing that a claimant who has proven that he can no longer do his former work can perform substantial gainful activities existing in the national economy. The burden *is* a burden of proof insofar as once it shifts to the Secretary, the Secretary cannot win unless it is carried, but it *is not* the "burden of proof" normally encountered in litigation since the case is not necessarily lost when it is not met. This anomaly is caused by the statutory scheme which enables the court to remand the case to the ALJ "for good cause shown." 42 U.S.C.A. § 405(g)

(West 1974). "Good cause" includes a finding that the Secretary's decision is not supported by substantial evidence, combined with an inability to make a definitive ruling on disability. *See* note 8, *infra.*

4. A custodian who cannot *push* a broom to sweep, *pull* a cart to move equipment, *climb* stairs to work on a higher floor, or *balance* on a ladder and *reach* overhead to change a lightbulb, in short, a janitor who cannot janitor, is comparable to a thinker with a head of straw, a lover without a heart, a lion who lacks courage and cannot lead, or a wizard without magic powers.

5. It is clear that vocational expert testimony is not required when the claimant has failed to meet his burden of proving that he cannot return to his former employment, and therefore

see, e. g., *White v. Harris*, 605 F.2d 867 (5th Cir. 1979) (per curiam); *Breaux, supra*, 421 F.2d at 689–90, the general rule is that such testimony is required. *Garrett v. Richardson*, 471 F.2d 598, 603–04 (8th Cir. 1972); *accord, Laffoon v. Califano*, 558 F.2d 253 (5th Cir. 1977); *Lewis v. Weinberger*, 515 F.2d 584 (5th Cir. 1975); *see, e. g., Daniel v. Gardner*, 390 F.2d 32 (5th Cir. 1968); *cf. Taylor v. Weinberger*, 512 F.2d 664, 667 (4th Cir. 1975) ("The proposition that the Secretary may establish a specific vocational ability solely through medical evidence has been soundly rejected."). It is only when the claimant can clearly do *unlimited types* of light work, *see, e. g., White, supra*, 605 F.2d at 868–69; *Breaux, supra*, 421 F.2d at 689–90, that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. In such a case, since medical evidence has established that the claimant can do virtually *any type* of light work, and since the ALJ can take administrative notice that jobs requiring only light work exist in the economy, *see, supra*, vocational expert testimony that the claimant is able to perform jobs which exist in the national economy is the equivalent of "put[ting] two and two together," *White, supra*, 605 F.2d at 869, and is therefore unnecessary. On the other hand, when the claimant can only perform a limited scope of light work, competent evidence—presumably testimony by a vocational expert—is necessary to show that an individual with the claimant's limited ability can nevertheless engage in substantial gainful activity by performing work which exists in the national economy. *See Garrett, supra*, 471 F.2d at 603–04; *cf. Breaux, supra*, 421 F.2d at 689–90 ("If the nature of Breaux's disability limited the scope of light work which he could perform, his argument [that voca-

tional expert testimony was required] would be much more persuasive."). In other words, when a claimant can perform *any* type of light to moderate physical activity, administrative notice that jobs requiring such activities exist makes vocational expert testimony unnecessary, *see White, supra*; however, when a claimant can perform only *limited* types of light to moderate activity, a vocational expert must be called to testify that jobs requiring only the activities which the claimant can perform exist in the national economy.

In the case at bar, it is clear that appellant could perform only a limited scope of light to moderate physical activities. Hence, it was incumbent upon the ALJ to consider expert testimony as to whether a person of appellant's age, experience, education and impairments[6] could perform work which existed in the national economy. Because no such evidence was presented, the ALJ's finding of no disability was not supported by substantial evidence.

## B. *Alcoholism*

■ It is well-settled that alcoholism, alone or combined with other causes, can constitute a disability if it prevents a claimant from engaging in substantial gainful activity.[7] *See Johnson v. Harris*, 625 F.2d 311 (9th Cir. 1980); *Hicks v. Califano*, 600 F.2d 1048 (4th Cir. 1979); *King v. Califano*, 599 F.2d 597 (4th Cir. 1979); *Lewis v. Califano*, 574 F.2d 452 (8th Cir. 1978); *Griffis v. Weinberger*, 509 F.2d 837 (9th Cir. 1975); *cf. Strickland v. Harris*, 615 F.2d 1103, 1110 n.5 (5th Cir. 1980) (court does not reach issue whether it was error for the ALJ to fail to reach a conclusion with respect to "suspected chronic substance abuse by the claimant, which might itself have formed the basis of a disability claim"). Before a finding of disability due to alcoholism can

---

fails to establish a prima facie case of disability. *See Gray v. Secretary of HEW*, 421 F.2d 638 (5th Cir. 1970) (per curiam).

**6.** A person's age, experience and education must be taken into account in determining whether an impairment prevents him from engaging in substantial gainful work which exists in the national economy. *See Fruge, supra*,

631 F.2d at 1246–47; *Garrett, supra*, 471 F.2d at 603–04.

**7.** "The proposition that chronic acute alcoholism is itself a disease, 'a medically determinable physical or mental impairment,' is hardly debatable today." *Griffis, supra*, 509 F.2d at 838.

be made, it must first be shown that the claimant is addicted to alcohol and does not have the ability to control its use voluntarily. *See Hicks, supra; Lewis, supra; Adams v. Weinberger*, 548 F.2d 239, 244–45 (8th Cir. 1977); *Gray v. Califano*, 448 F.Supp. 1142 (S.D.Cal.1978); *Sharpe v. Califano*, 438 F.Supp. 1282, 1286 (E.D.Va.1977). As has been noted by the Ninth Circuit, "some alcoholics can stop; more cannot." *Griffis, supra*, 509 F.2d at 838 n.1.

■ In the case at bar the ALJ found that Ferguson suffered from alcoholism. Record at 20. However, the ALJ went on to find that appellant "has the ability to stop drinking, having done so once, and should stop again." *Id.* Since no medical evidence was presented that Ferguson could control his alcoholism, the finding of remediability was presumably based (1) on the fact that appellant underwent detoxification treatments at East Mississippi State Hospital in January, 1977, *see id.* at 114, and (2) on appellant's own testimony that he once quit drinking and now only drinks "once in a while," *see id.* at 49–50. We find this evidence to be of little value in determining whether appellant can now control his drinking, and we therefore hold that the ALJ's conclusion that appellant's alcohol problem was remediable was not supported by substantial evidence.

The fact that Ferguson may have undergone what was formerly thought to be successful detoxification *some time ago* does not present evidence that he *now* has the ability to control his drinking. Indeed, the fact that appellant has been hospitalized more than once as a result of his drinking problem, *see id.* at 55–58, 118; *see, e. g., id.* at 110–14, 143–47, suggests that while past detoxification was apparently thought to have been successful, *see id.* at 114, the roots of the disease remained deep within appellant. One of the more tragic aspects of alcoholism is that the hopes spawned by an apparently successful effort to "dry out" may in a moment be dashed against the rocks of a whiskey glass. Moreover, while the medical summary written when appellant was discharged from his 1977 hospital admission concludes that detoxification was successful, it also notes that "this patient is very much in need of followup service in the community," and that appellant would be referred to a local mental health center and to an Alcoholics Anonymous chapter. *Id.* at 114. Hence, the reports of appellant's past detoxification provide little guidance concerning his present ability to control his alcoholism. The conclusory assertion that because a person has once stopped drinking, he can again do so, *id.* at 20, is unwarranted and shows an insensitivity to the problems faced by alcoholics.

■ Furthermore, a finding that an individual is not disabled by alcoholism cannot rest solely upon the testimony of the individual himself, since such testimony may be filled with "the rationalizations of a sick individual who does not realize the extent of his illness." *Adams, supra*, 548 F.2d at 245; *accord, Lewis, supra*, 574 F.2d at 456. Hence, appellant's own testimony concerning his drinking problem cannot support the finding that his alcoholism is remediable. In light of the fact that no competent medical evidence was presented concerning appellant's ability to control his drinking, and that the only evidence on this subject was appellant's own testimony together with hospital reports that a past detoxification effort was thought to have been successful, we find that the ALJ's conclusion that appellant could stop drinking was unsupported by substantial evidence, and we therefore remand for further proceedings on this issue.

## IV. CONCLUSION

■ We have found that the ALJ's conclusions that appellant was able to perform substantial gainful activity existing in the national economy, and that appellant was able to control his drinking problem voluntarily, were unsupported by substantial evidence. However, we cannot agree with appellant that he has conclusively proven his disability and is therefore entitled to a decision in his favor based upon the existing record. The record is simply inconclusive as to whether jobs exist in the

national economy which a person of appellant's age, experience, education and impairments can perform, and whether appellant's alcoholism is disabling or not. Hence, we reverse the judgment of the district court and remand the case so that it can be returned to the Secretary for further proceedings in accordance with this opinion.[8] On remand, the Secretary should consider the combined effect of all of Ferguson's impairments,[9] including subjective evidence of pain,[10] in determining whether Ferguson is disabled under the statute.[11]

REVERSED AND REMANDED.

8. "A reviewing court can, in its discretion and for 'good cause shown,' remand a social security claim in order that additional evidence be taken. 42 U.S.C. § 405(g)." *Johnson, supra,* 612 F.2d at 998. "Good cause shown" has been defined by this court to include a finding that the Secretary's decision is unsupported by substantial evidence, combined with an inability to make a definitive ruling concerning a claimant's disability based on the record before the court. *See id.; Fruge, supra,* 631 F.2d at 1247. In the case at bar we have found that the Secretary's findings are not supported by substantial evidence, but that the record does not support a dispositive ruling for appellant. Because "[t]he present state of the record . . . makes it impossible for us to rule definitively one way or the other," *id.,* we remand for further proceedings.

9. It is clear that the Secretary must consider the combined effect of a claimant's impairments in making a determination of disability. *See Brenem, supra,* 621 F.2d at 690; *Strickland, supra,* 615 F.2d at 1110; *Knox v. Finch,* 427 F.2d 919 (5th Cir. 1970). In the case at bar, this includes consideration of any impairments resulting from burns suffered by appellant after the original ALJ decision was rendered. We offer no opinion as to whether this would in itself constitute new evidence requiring a remand to the Secretary. We simply find that considerations of fairness and efficiency, together with the rule that impairments must be considered *in toto,* require the Secretary to consider all the evidence—including evidence

of events occurring after the initial administrative hearing—in deciding the case on remand.

10. Appellant claims that the ALJ did not adequately consider subjective evidence of pain in making his decision. Since we remand based on the alcoholism and vocational expert issues, *supra,* we need not reach this issue. However, we take this opportunity to note that while pain can be the basis of disability even without objective medical evidence supporting its existence, *see Western, supra,* 633 F.2d at 1206 n.4; *Gaultney v. Weinberger,* 505 F.2d 943 (5th Cir. 1974), and while the Secretary must consider a claimant's subjective pain and discomfort in determining the existence of a disability, *see Rhynes v. Califano,* 586 F.2d 388 (5th Cir. 1978); *Mims v. Califano,* 581 F.2d 1211 (5th Cir. 1978); *Laffoon, supra,* 558 F.2d at 254–56, this subjective evidence need not take precedence over conflicting objective testimony, and the burden is with the claimant to show that the pain is disabling. *See id.; Rhynes, supra,* 586 F.2d at 390.

11. Appellant claims that the Appeals Council erred in summarily affirming the ALJ's finding without issuing a written opinion. However, since the Appeals Council may deny a party's request for review—as was effectively done here—without a written explanation, this claim is without merit. *See* 20 C.F.R. §§ 404.947–404.951 (1980).

We have considered appellant's remaining claims and find them to be without merit.